# EXHIBIT A

Filed          22-CI-00040     03/03/2022     Emily Ward Buzanis, Graves Circuit Clerk

## COMMONWEALTH OF KENTUCKY
## 52ND JUDICIAL CIRCUIT
## GRAVES CIRCUIT COURT
## CIVIL BRANCH
## CIVIL ACTION NO. _____

ELIJAH JOHNSON, WILLIAM ALIFF,                          PLAINTIFFS
MATTHEW BARBER, MARY SMITH,
HALEY CONDER, MCKAYLA
EMERY, MATTHEW RILEE VALIANT,
AND JOHN LAWSON, individually and
on behalf of those similarly situated

v.          **VERIFIED CLASS ACTION CIVIL COMPLAINT**

MAYFIELD CONSUMER
PRODUCTS, LLC                                           DEFENDANT

\* \* \* \* \* \* \* \* \*

Come now the Plaintiffs, by counsel, and for their Verified Class Action Civil

Complaint against the Defendant, state as follows:

### PARTIES, JURISDICTION AND VENUE

1.     At all times relevant to this action, Plaintiffs Elijah Johnson, Mary Smith,

Haley Conder, McKayla Emery, and John Lawson were residents of Graves County,

Kentucky.

2.     At all times relevant to this action, Plaintiffs William Aliff and Matthew Rilee

Valiant were residents of Marshall County, Kentucky.

3.     At all times relevant to this action, Plaintiff Matthew Barber was a resident

of Ballard County, Kentucky.

4.     At all times relevant to this action, Defendant Mayfield Consumer Products

LLC ("Defendant" or "MCP") was a Kentucky business entity duly licensed and

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : **000001 of 000036**

Filed          22-CI-00040     03/03/2022     Emily Ward Buzanis, Graves Circuit Clerk

authorized to conduct business in the Commonwealth of Kentucky and was conducting

business in Graves County, Kentucky.

5.    MCP's agent for service of process is Charles S. Foster, 205 North 6th

Street, Mayfield, Kentucky 42066.

6.    MCP's attorney has agreed to accept service of process as follows:

> Russell B. Morgan
> Bradley Arant Boult Cummings LLP
> 1600 Division Street, Suite 700
> Nashville, Tennessee 37203
> rmorgan@bradley.com
> (615) 252-2311

7.    The claims of the Plaintiffs exceed the minimal jurisdictional amount of this

court.

8.    Venue is proper because at the time of the actions or inactions giving rise

to the causes of action stated herein, the Defendant was located in Graves County,

Kentucky, and/or the injuries to and/or death of Plaintiffs occurred there.

### FACTS

9.    MCP is a 500-employee company including assembly-line laborers

employed directly by it and through temporary staffing agencies in the Jackson

Purchase region of Western Kentucky.

10.    Operating several manufactories in the region, MCP produces scented

candles for upscale retailers whom the company supplies through mass distribution

channels.

11.    The company's factory at 112 Industrial Drive, Mayfield, Kentucky, 42066

was a 24-hour operation that produced candles for retailers, including Bath & Body

Works.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000002 of 000036

12.   MCP operates a plant in Hickory, Kentucky, which is about six miles north of Mayfield in Graves County.

13.   MCP had a history of workplace safety violations in recent years, having been cited by the Kentucky Department of Workplace Standards, Division of Occupational Safety and Health, for serious transgressions as recently as 2019.

14.   In September 2019 alone, that state division issued seven violations of safety standards coded as "serious," resulting in fines.

15.   By December 2021, MCP had been ramping up production to meet holiday demand, and employees were working 10 to 12-hour shifts with required Saturdays for incentive and/or overtime pay.

16.   During this season, MCP employees were working 10-hour shifts five days per week.

17.   In the incentive- and overtime-pay scheme operated by MCP required employees to work at least every other Saturday in order for employees to obtain compensation beyond Plaintiffs' standard base pay of $8/hour, once they had worked 50 hours in a given week. Therefore, terminating Plaintiffs during a Friday night shift at holiday time, after they had put in upwards of 50 hours already worked, would have effected a devastating financial blow, absent the Saturday shift numerous Plaintiffs intended to work on Saturday, December 11, 2021.

18.   On Friday, December 10, 2021, MCP required Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, Matthew Barber, William Aliff, Matthew Rilee Valiant, John Lawson and 102 similarly situated employees to continue to work at its place of business even though it knew or should have known about the expected

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000003 of 000036

Filed 22-CI-00040 03/03/2022 Emily Ward Buzanis, Graves Circuit Clerk

tornado and the danger of serious bodily injuries and death to its employees and others at its place of business, if its employees and others were required to remain at its place of business during the pendency of the expected tornado.

19.    MCP had up to three and one-half hours before the tornado struck its place of business to allow its employees and others to leave its worksite as a safety precaution.

20.    MCP refused to allow Plaintiffs Elijah Johnson, Mary Smith, Haley Conder, McKayla Emery, Matthew Barber, William Aliff, Matthew Rilee Valiant and John Lawson to leave work before the tornado actually struck its place of business even though it had at least three hours of notice of the danger this tornado posed to its place of business and to its employees.

21.    MCP repeatedly threatened to terminate the employment of any employee who left because of the expected tornado in the hours before the tornado actually struck its place of business.

22.    One report by Bruce Schreiner, published on December 15, 2021, at 6:37 a.m. ET, states the following:

> MAYFIELD, Ky. (AP) — An employee of the Kentucky candle factory where eight workers were killed by a tornado said Tuesday that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching.
>
> Haley Conder, who worked at the Mayfield Consumer Products factory on and off for 10 years, also questioned why the company did not encourage workers to go home — or at least give them a better understanding of the danger — between a first tornado siren around 6 p.m. Friday and another one around 9 p.m., shortly before the tornado struck.
>
> "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000004 of 000036

worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

… More than 100 people were working on holiday candle orders when the twister leveled the facility. The scale of the damage initially stoked fears that scores of workers could be found dead in the rubble.

23.     Another media report by Eileen Street, published at 3:43 p.m. ET on

December 14, 2021, states the following:

LOUISVILLE, Ky. — Last Friday, Dec. 10, 110 employees were working at Mayfield Consumer Products, the candle factory in Mayfield destroyed by a tornado. A volunteer spokesperson for Mayfield consumer products told Spectrum News 1 on Tuesday that out of the 110 people at the factory Friday night, eight are confirmed dead and the rest have been accounted for…. Jamie Brien also worked that night. The floor supervisor at Mayfield Consumer Products told Spectrum News 1 he called the production manager Thursday night.

"And asked him you, you know, 'How was we going to deal with the storm?' That it was supposed to be pretty bad, you know, the following night," Brien said. "And he just said, 'We would deal with it as it unfolded,' and that's what we did." … "When the alarm went off the second time, yes, that's when I thought, 'Man, we should've probably sent everybody home,'" Brien said. "You know, 'Here we go again,' and the storm is intensified from, you know, 5:30 [p.m. CST] when the other alarm had went off…. Parsons-Perez didn't think twice about going to work Friday. The Chicago native said she is used to severe weather.

Reflecting back on Friday, Parsons-Perez said she believed that her immediate supervisor did everything he should have to protect her and her co-workers. However, she wasn't sure about the decisions made by those above her supervisor.

"Whoever his boss is probably should have said, 'We probably don't need to make those candles today. Maybe we should wait.' But they didn't," Parsons-Perez said.

24.     Another media report by Deon J. Hampton, published on December 13,

2021, at 3:57 p.m. ET and updated on December 14, 2021 at 7:49 a.m. ET, states the

following:

MAYFIELD, Ky. — As a catastrophic tornado approached this city Friday, employees of a candle factory — which would later be destroyed — heard the

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000005 of 000036

warning sirens and wanted to leave the building. But at least five workers said supervisors warned employees that they would be fired if they left their shifts early.

For hours, as word of the coming storm spread, as many as 15 workers beseeched managers to let them take shelter at their own homes, only to have their requests rebuffed, the workers said."

"Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said."

"If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

… About 15 people asked to go home during the night shift shortly after the first emergency alarm sounded outside the facility, said another employee, Haley Conder. There was a three- to four-hour window between the first and second emergency alarms when workers should have been allowed to go home, she said.

…Elijah Johnson, 20, was working in the back of the building when several employees wanting to head home walked in to speak with supervisors. He joined in on the request.

"I asked to leave and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked.

"Yes," a manager responded, Johnson told NBC News.

Johnson said managers went so far as to take a roll call in hopes of finding out who had left work.

25.    Mary Smith requested to leave work and was told by two supervisors,

"Lorenzo" and Justin Bobbitt, that she could not leave and that if she did leave, she

would be terminated. Also, she witnessed Mr. Bobbitt tell multiple other employees that

if they were to leave, they would be terminated. She witnessed Mr. Bobbitt tell Elijah

Johnson that Mr. Johnson could not leave and if Mr. Johnson were to leave, he would

be terminated. She witnessed Bobbitt calling roll to ascertain whether any employees

had left work so as to enforce MCP's earlier threat to terminate anyone who left work.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000006 of 000036

Filed          22-CI-00040          03/03/2022          Emily Ward Buzanis, Graves Circuit Clerk

26.     Haley Conder asked to leave and was told by a supervisor that she could not leave. She had been informed that MCP's Human Resources officer on duty that night was going to terminate the employment of people who left.

27.     McKayla Emery said in an interview from her hospital bed that workers first asked to leave shortly after tornado sirens sounded outside the factory around 5:30 p.m. They were told by supervisors that they could not leave.

28.     Employees at the Hickory Point plant owned by MCP were directed NOT to come to work by MCP the afternoon of December 10, 2021 due to the weather. When MCP employees at the 112 Industrial Drive plant asked to leave to go home in her presence, though, Ms. Emery witnessed Justin Bobbitt, the main overnight supervisor, say: "**You more than likely will lose your job.**"

29.     Matthew Barber requested to leave work and was told by two supervisors, "Lorenzo" and Justin Bobbitt, that he could not leave and if he were to leave — that he would be terminated. Also, Mr. Barber witnessed Mr. Bobbitt telling employees that if they were to leave, then they would be terminated. Mr. Barber witnessed Mr. Bobbitt tell Elijah Johnson that Mr. Johnson could not leave and if Mr. Johnson were to leave, he would be terminated.

30.     Dustin Aliff requested to leave work and was told by a supervisor that he would be terminated.

31.     William Aliff requested to leave work and was told by a supervisor that he would be terminated.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000007 of 000036

32.    Matthew Rilee Valiant requested to leave work and was told by Lorenzo, his supervisor, that if he left, he would be terminated. He also witnessed Lorenzo stating in general that if anybody left, they would be terminated on the spot.

33.    John Lawson had just relocated to Mayfield from Reno, Nevada, in order to be closer to his grandchildren. He had worked at the factory in quality control for one week prior to December 10, 2021. After supervisors barred employees from leaving, he voiced concerns that workers should be allowed to leave and noted that if this severe weather event were forecast in Nevada, the company would have shut down simply to avoid liability in the event of a mass casualty event. In response, female supervisor Jennifer J. laughed and said, "Welcome to Kentucky." According to GPS on a device belonging to Mr. Lawson, he still would have had 13 minutes after her comment to get clear of the path of the tornado and before the factory was twisted and smashed with all 110 employees on duty affected. The destruction caused by the tornado buried Mr. Lawson in rubble. It took three to four hours for emergency personnel and others to dig him out as he lay adjacent to a deceased victim.

### *MCP Commences a False-Light Cover-up Scheme*

34.    Elijah Johnson stated in an NBC interview (which was reported by Deon J. Hampton as published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021) that he had been working in the back of the building when several employees wanting to head home walked in to speak with supervisors. He joined in on the request. "I asked to leave, and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked. "Yes," a manager responded, Johnson told NBC News. Johnson said managers went so far as to take a

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000008 of 000036

roll call in hopes of finding out who had left work, so that they could terminate them as promised.

35.    Haley Conder gave a telephonic interview to the Associated Press (which is reported by Bruce Schreiner as published on December 15, 2021, at 6:37 a.m. ET) and stated therein that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching. "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

36.    McKayla Emery stated in an interview (which is in the report by Deon J. Hampton published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021), "Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said." "If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

37.    Robert (Bob) Ferguson, a former partner at global public-relations behemoth Fleishman-Hillard who is the CEO and a founder of The Hawksbill Group, a business and communications consulting firm based in Washington, D.C. (hereinafter referred to as Ferguson), was deployed by MCP as its engaged spokesperson in the aftermath of the tornado and the damage caused by said tornado. In his capacity as an authorized agent of MCP, Ferguson placed the

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000009 of 000036

character of Elijah Johnson, Haley Conder, and McKayla Emery in a false light during interviews he gave to various news organizations that were published to the public.

38.     The article, titled "Ky. Candle Workers Sue Factory, Claiming They Couldn't Leave Before Deadly Tornado Employees are seeking compensation, punitive damages and legal fees" by Natasha Dado published December 17, 2021 03:10 PM, states in relevant parts the following: "Similarly, NBC News reported that at least five workers claimed supervisors told workers they would be terminated if they left the workplace early. Mayfield Consumer Products spokesman Bob Ferguson — who did not immediately return PEOPLE's request for comment about the suit — told NBC News that the allegations in its story were 'absolutely untrue.' 'We've had a policy in place since Covid began. Employees can leave any time they want to leave and they can come back the next day,' the spokesperson added."

39.     Also, the article titled "Mayfield candle factory tornado survivors sue company, allege 'flagrant indifference'" by Ben Tobin of the Louisville Courier-Journal, published at 7:02 a.m. ET on Dec. 16, 2021, and updated at 12:13 p.m. ET on Dec. 17, 2021, states in relevant parts the following:

> Ferguson has repeatedly denied claims about Mayfield Consumer Products threatening employees and refusing to let them leave, calling them "incredibly false." "Employees can go home at any time without any penalty," Ferguson previously told The Courier Journal. "Since COVID has made it so difficult to find employees, we have mended our practices. "If someone comes to work, and three hours into the shift, they say 'I want to go home,' they're free to go home without penalties, and they can come back to work the next day and start."

40.     The article titled "Attorney claims 'smoking gun' as Mayfield factory workers consider lawsuit" by Jared Bennett of the Kentucky Center for Investigative Reporting published on Dec. 15, 2021, in relevant parts states: "Bob Ferguson of the

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000010 of 000036

Hawksbill Group, the Washington D.C. based public relations firm representing the company, said earlier this week that any reports that employees weren't free to leave was 'baloney.' Reached by phone Tuesday, Ferguson said he stands by that statement."

### *MCP Defames its Honest Employees' Character using the Mass Media*

41.      Elijah Johnson stated in the NBC interview (which is reported in the media report by Deon J. Hampton, published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021) that he was working in the back of the building when several employees wanting to head home walked in to speak with supervisors. He joined in on the request. "I asked to leave and they told me I'd be fired," Johnson said. "Even with the weather like this, you're still going to fire me?" he asked. "Yes," a manager responded, Johnson told NBC News. Johnson said managers went so far as to take a roll call in hopes of finding out who had left work, so that they could terminate them.

42.      Haley Conder spoke directly with the Associated Press (which is reported by Bruce Schreiner, published on December 15, 2021, at 6:37 a.m. ET) and stated therein that a supervisor threatened her with written disciplinary action if she went home early because storms were approaching, according to the Schreiner report: "They (the company) had from 6 o'clock to 9 o'clock to allow us to go home, to tell us really what was going on and that we needed to prepare ourselves for the worst," Conder told The Associated Press in a phone interview. "It was nothing like that. Not one supervisor told us what was really going on."

43.     McKayla Emery stated in an interview (which is reported in the televised and printed NBC report by Deon J. Hampton, published on December 13, 2021, at 3:57 p.m. EST and updated on December 14, 2021), "Supervisors and team leaders told employees that leaving would probably jeopardize their jobs, the employees said." "If you leave, you're more than likely to be fired," Emery said she overheard managers tell four workers standing near her who wanted to leave. "I heard that with my own ears."

44.     Ferguson, engaged by MCP to be its spokesperson and in his capacity as an authorized agent of MCP, defamed the character of Elijah Johnson, Haley Conder, and McKayla Emery during interviews he gave to various news organizations that were published to the public.

45.     The *People Magazine* article titled "Ky. Candle Workers Sue Factory, Claiming They Couldn't Leave Before Deadly Tornado Employees are seeking compensation, punitive damages and legal fees" by Natasha Dado, published December 17, 2021, at 3:10 PM, states in relevant parts the following: "Similarly, NBC News reported that at least five workers claimed supervisors told workers they would be terminated if they left the workplace early. Mayfield Consumer Products spokesman Bob Ferguson — who did not immediately return PEOPLE's request for comment about the suit — told NBC News that the allegations in its story were "absolutely untrue." "We've had a policy in place since Covid began. Employees can leave any time they want to leave and they can come back the next day," the spokesperson added."

46.     Also, the article titled "Mayfield candle factory tornado survivors sue company, allege 'flagrant indifference'" by Ben Tobin of the Louisville Courier Journal,

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000012 of 000036

as published at 7:02 a.m. ET Dec. 16, 2021, and updated at 12:13 p.m. ET Dec. 17, 2021, states in relevant parts the following:

> Ferguson has repeatedly denied claims about Mayfield Consumer Products threatening employees and refusing to let them leave, calling them "incredibly false." "Employees can go home at any time without any penalty," Ferguson previously told The Courier Journal. "Since COVID has made it so difficult to find employees, we have mended our practices. "If someone comes to work, and three hours into the shift, they say 'I want to go home,' they're free to go home without penalties, and they can come back to work the next day and start."

47.     The article titled "Attorney claims 'smoking gun' as Mayfield factory workers consider lawsuit" by Jared Bennett of the Kentucky Center for Investigative Reporting published on Dec. 15, 2021, in relevant parts states the following: "Bob Ferguson of the Hawksbill Group, the Washington D.C. based public relations firm representing the company, said earlier this week that any reports that employees weren't free to leave was 'baloney.' Reached by phone Tuesday, Ferguson said he stands by that statement."

### *MCP Refuses to Correct False Statements and Continues Global Onslaught*

48.     Still recovering from the injuries arising from having been trapped under tornado rubble at his workplace, Plaintiff Johnson grew appalled by the words and actions attributed to his employer through its agent, the D.C.-based Ferguson, in global media outlets.

49.     Mr. Johnson sought counsel in Washington, D.C. to address Ferguson and subsequently retained counsel in Kentucky to resolve the false statements.

50.     On December 15, 2021, The Courier-Journal's Ben Tobin reported on the mortifying impasse caused by Defendant:

The only client [Counsel to Johnson] Jones identified is 20-year-old Elijah Johnson. The others, he said, "are not being identified by name because of real-time reprisals that already have begun."

Jones said he has sent Mayfield Consumer Products, its CEO Troy Propes and its spokesperson Bob Ferguson a "cease-and-desist" to stop claiming that candle factory employees could have left at any point and that their jobs were not threatened for leaving before the tornado demolished the factory.

Jones said he was giving the company until 5 p.m. Wednesday to comply and retract its statements. He provided an email to The Courier Journal sent to info@hawksbillgroup.com — the email address for The Hawksbill Group, a consulting firm for which Ferguson is CEO — that was sent at 11:50 p.m. Tuesday.

Jones said he tried to call Ferguson on Wednesday morning.

Ferguson told The Courier Journal on Wednesday morning the company has not received a cease-and-desist request or any notice of pending litigation. Asked if he stands by his earlier comments to The Courier Journal that employees' claims of being threatened over leaving the candle factory were "incredibly false," he said "of course."

51.     Thus, MCP refused to retract its false and defamatory statements when given the opportunity to do so prior to institution of legal proceedings.

### Sued in Court, MCP Temporarily Ceases Defamation

52.     After the 5 p.m. December 15 deadline passed amid the reported intransigence by MCP, and with no direct acknowledgement of Mr. Johnson's demand by it, Mr. Johnson filed suit around 7:30 p.m. Central Daylight Time on Wednesday December 15, 2021.

53.     On December 16, 2021, after being notified of the lawsuit, MCP temporarily re-directed its media narrative — from attacking its employees who had told the truth to spinning the supervisors' trapping of MCP's employees as a "heroic" sheltering effort.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000014 of 000036

54.    Louisville news outlet 89.3 WFPL reported from the Kentucky Center for

Investigative Reporting that day as follows:

> An employee of the Mayfield candle factory who survived the building's collapse during last week's tornado has filed a lawsuit claiming the company did not adequately protect them during the storm.
>
> Eight people died when the storm hit; there were 110 people inside the building.
>
> The lawsuit was filed in Graves Circuit Court on behalf of Elijah Johnson and other "similarly situated" employees of Mayfield Consumer Products. The suit claims the company refused to let its employees leave the factory Friday night, even though the factory had "at least 3 hours' notice of the danger" the severe weather could bring.
>
> [...] Bob Ferguson, a spokesperson for Mayfield Consumer Products, could not be immediately reached for comment. Ferguson said this week that employees were free to leave without retribution.
>
> Amos Jones, a Washington, D.C. based attorney working with [Kentucky counsel of record William] Davis on the case, said they decided to file the lawsuit after the company retained a public relations firm to deny the claims of surviving employees.
>
> "It's not even spin, it's a cover up," Jones said Thursday. Jones issued a press release this week claiming a "smoking gun": he later told KyCIR that an employee had a recording backing up the claims they faced firing if they left. But there are no details about the evidence or allegations in the lawsuit beyond those cited in news stories.
>
> [...] On Tuesday, Mayfield Consumer Products CEO Troy Propes announced in a statement that the company had hired experts to investigate how managers handled the storm.
>
> "We're confident that our team leaders acted entirely appropriately and were, in fact, heroic in their efforts to shelter our employees," the statement said.

### MCP Falsely Tells NBC that Johnson was Never at Work during Tornado

55.    On or about Friday, December 17, NBC News reporter Deon J. Hampton,

who had published widely over the week on Mr. Johnson's account of this harrowing

ordeal inside MCP's workplace before, during, and after the tornado, telephoned Mr.

Johnson and invited him to "come clean" if what MCP had just told him were true.

56.     Mr. Johnson replied, "What did MCP say?"

57.     Mr. Hampton informed Mr. Johnson that NBC had just been threatened

with a defamation lawsuit against it by MCP. MCP's purported basis for this claim was

NBC's reporting of anything Mr. Johnson had said about the tornado at the MCP candle

factory because, according to MCP in its grievance conveyed to Hampton and his

superiors in the storied news organization, Mr. Johnson had never been at work at

MCP's factory on the night the high-end EF4 tornado struck and destroyed the building,

and (as *in fact known by MCP when it attacked NBC*) had trapped Mr. Johnson under

its rubble for hours, and causing Mr. Johnson's need to be transported to and treated in

the hospital well into the morning of Saturday December 11, 2021.

58.     MCP sought to decapitate this class action hours after it was filed by going

after, but as stated *supra* in the December 15 Courier-Journal publication: "[t]he only

client Jones identified[, was] 20-year-old Elijah Johnson. The others, he said, 'are not

being identified by name because of real-time reprisals that already have begun.'"

59.     MCP's defamatory, false-light offensive failed, as numerous other in-

good-standing employees of it who had witnessed Mr. Johnson's plea in real time prior

to the tornado (and/or who themselves had reported the same warning from some of the

same managers) immediately came forward to contact and to retain the counsel

seeking remedies in this action.

60.     Upon information and belief, MCP as late as Tuesday December 21, 2021

– Christmas Week, and with a state investigation into its safety practices announced as

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000016 of 000036

under way by Kentucky Governor Andy Beshear — had gone back to its slash-and-burn-employees/survivors public misconduct, according to the insurance trade publication *NU Property Casualty 360*, which reported at 4 a.m. that day under the headline "Candle factory hit by tornado facing workplace hazards lawsuit/The employees allege the company required them to stay at work or face discipline, despite warnings that dangerous weather was approaching:" "Mayfield Consumer Products spokesman Bob Ferguson, who works for a public relations firm, denied that employees were stuck at the plant or faced" discipline.

> ***MCP did not train these named plaintiffs in emergency safety protocols and only had one hallway, one men's restroom, and one women's restroom for its 110 employees to shelter in during the tornado and no indoor emergency alarm system.***

61.    Ferguson, engaged by MCP to be its spokesperson and in his capacity as an authorized agent of MCP, told the Associated Press in a published report the following: "Many of the employees were gathered in the tornado shelter and after the storm was over they left the plant and went to their homes."

62.    MCP did not train these named plaintiffs in emergency safety protocols and only had one hallway, one men's restroom and one women's restroom for its 110 employees to shelter in during the tornado.

63.    Mark Saxton, 37, who worked at the facility as a forklift operator, said the following in an NBC news interview: "The first warning came, and they just had us go in the hallway. After the warning, they had us go back to work," he said to NBC. "They never offered us to go home."

64.    Haley Conder in an NBC news interview said the following:

Presiding Judge: HON. KEVIN D. BISHOP (652418)

After the first siren sounded, she said that workers were kept in the facility's hallways and bathrooms because shift leaders allegedly said the employees were required to stay due to safety procedures....When the second tornado siren went off at around 9 p.m. local time, Conder said she and a group of coworkers asked to leave, but were told by managers, "you can't leave" and "you have to stay here." She added, "The situation was bad. Everyone was uncomfortable."

65.     Also, Conder had worked for MCP for one and half years before the tornado demolished its factory. In that time, she was never trained on safety protocols by MCP other than being told to go to the restroom during her orientation which only included a walk through the hallway leading to the restrooms and instruction  to go there.

66.     McKayla Emery had previously been employed by MCP off and on since 2018. She recently was employed by MCP from May 2021 to October 2021 and from November 2021 to December 2021 and was working there  at the time the tornado hit MCP's factory. Her orientations by MCP did not include any training on emergency safety protocols other than telling her to go to the restrooms and the hallway.

67.     Matthew Rilee Valiant worked for MCP two and one-half months and was working at MCP's factory when the tornado demolished it. In that time, he was never trained on any safety protocols.

68.     William Aliff, Dustin Aliff, Matthew Barber and Mary Smith were working at MCP's factory when the tornado demolished it. Prior to the tornado demolishing said factory, they never received any training on any safety protocols by MCP.

69.     Elijah Johnson was working at MCP's factory when the tornado demolished the factory while he and 109 employees were actually inside the factory. His orientation by MCP in the nine months that he was working there before the tornado

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000018 of 000036

demolished the factory did not include any training on emergency safety protocols other than telling him to go to the restrooms and the hallway.

70.   In addition, MCP's factory did not have any emergency alarm inside the building. The only emergency alarm that was relied on by MCP's supervisors on the day of the tornado was the public emergency alarm that was going off outside of the factory.

## CLASS ALLEGATIONS

71.   The Plaintiff Class includes all persons similarly situated to Plaintiffs, as more fully described below, who also sustained physical, mental and/or emotional injuries and/or died as a result of the December 10, 2021 tornado striking and demolishing MCP's place of business, inclusive of any loss of consortium claims, and who have not filed a civil action and/or do not have a civil action pending in state or federal court asserting the same claims against the same defendant as asserted herein.

72.   Plaintiffs seek to represent the following class of individuals or representatives:

> All persons, or representatives of estates of persons, who sustained physical, mental and/or emotional injuries or died as a result of the December 10, 2021 tornado striking Defendant's place of business and by reason of the causes of action contained in Counts I, II and III; and

> All persons who have a loss of consortium claim related to persons who sustained physical, mental and/or emotional injuries or died as a result of the December 10, 2021 tornado striking Defendant's place of business and by reason of the causes of action contained in Counts I, II and III.

> Excluded from the Class are those persons or representatives of estates that have filed and have pending a civil action in any state or federal court that asserts the same claims against the same defendant as asserted herein in Counts I, II and III.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000019 of 000036

Filed                22-CI-00040        03/03/2022        Emily Ward Buzanis, Graves Circuit Clerk

73.     Plaintiffs, and all others similarly situated, are entitled to have this case maintained as a class action pursuant to the Kentucky Rules of Civil Procedure.

74.     The Plaintiff Class is so numerous that joinder of all persons is impracticable and inefficient.

75.     There are common issues of law and fact applicable to the Plaintiff Class' claims and MCP's individual and collective liability thereunder. The same facts, the same Kentucky laws and regulations, and the same issues exist concerning MCP's individual and collective liability as described herein.

76.     Resolution of the common question(s) will advance resolution of the Plaintiff Class' claims. MCP's individual and collective conduct presents common factual questions that predominate. As such, the Plaintiff Class is necessarily bound together by the common factual questions relating to whether MCP's individual and collective conduct violated Kentucky law.

77.     The Plaintiff Class' claims are typical. Each putative class member experienced injuries and corresponding damages as the direct and consequential result of MCPs individual and collective actions as described herein – all together at once over the same hours in the same place under the same direct and indirect supervision. The Plaintiff Class' claims are subject to the same facts, law, and defenses.

78.     The Plaintiff Class' interests are directly aligned amongst themselves and, as such, they will fairly and adequately represent and protect the interests of the Class members. Further, the Plaintiff Class has retained counsel experienced in the prosecution of class action litigation who will adequately represent the interests of the Plaintiff Class and its members. The Plaintiff Class further is unaware of any conflicts of

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000020 of 000036

20

interests between the Plaintiffs and the absent Plaintiff Class members.

79.     The Plaintiff Class' retained counsel has, or can acquire, adequate
financial resources to assure that the interests of Plaintiff Class members will be
protected. Further, the Plaintiff Class representatives are knowledgeable concerning the
subject matter of this action and will assist counsel in the prosecution of this litigation.

80.     The prosecution of the Plaintiff Class' claims on an individual ad hoc basis
would create a substantial risk of inconsistent and/or varying legal outcomes that would
establish incompatible standards of conduct. Similarly, such an *ad hoc* litigation process
would create a further substantial risk of a single legal outcome that would as a practical
matter be dispositive of other Plaintiff Class members thereby substantially prejudicing
their respective interests. Class certification would alleviate these issues and provide for
an orderly and efficient resolution for all parties and the Court.

81.     Finally, the Plaintiff Class' claims present common questions of law and
fact that predominate over all alleged questions affecting individual class members.
The same facts and the same Kentucky laws and regulations will dictate the extent and
the scope of MCP's individual and collective liability to the Plaintiff Class—thus making
the procedural class action mechanism the fairest and, more importantly, efficient
means for timely and expeditiously resolving the Plaintiff Class' claims.

### COUNT I – FALSE IMPRISONMENT (ALL PLAINTIFFS)

82.     On or about December 10, 2021, Defendant, by and through its agents,
representatives, employees, vendors, ostensible agents, operators, owners, members,
managers, officers and/or partners, falsely imprisoned Plaintiffs.

83.     As a direct and proximate result of Defendant's false imprisonment,

Presiding Judge: HON. KEVIN D. BISHOP (652418)

Plaintiffs and the Plaintiff Class suffered physical, mental and/or emotional injuries, death and/or loss of consortium.

84.    If not falsely imprisoned, Plaintiffs and Plaintiff Class would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

85.    As a result of Defendant's actions, Plaintiffs and Plaintiff Class have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, destruction of the power to labor and earn money, funeral expenses, loss of consortium, increased risk of future injury and increased insurance premiums.

86.    The actions, inactions, failures and omissions of Defendant as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs, the Plaintiff Class and others.

87.    This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

### COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALL PLAINTIFFS)

88.    On or about December 10, 2021, Defendant, by and through its agents, representatives, employees, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality.

89.    Defendant, by and through its agents, representatives, employees,

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000022 of 000036

ostensible agents, representatives, employees, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, engaged in the conduct intentionally or recklessly.

90.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Plaintiff Class suffered physical, mental and/or emotional injuries and/or loss of consortium.

91.     If Defendant had not engaged in conduct so outrageous that it offended the generally accepted societal standards of decency and morality, Plaintiffs and Plaintiff Class would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

92.     As a result of Defendant's actions, Plaintiffs and Plaintiff Class have endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, loss of consortium, increased risk of future injury and increased insurance premiums.

93.     The actions, inactions, failures and omissions of Defendant as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs, the Plaintiff Class and others.

94.     This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

## COUNT III – STATUTORY VIOLATION (ALL PLAINTIFFS)

95.    Kentucky statutory law provides that "[a] person is guilty of unlawful imprisonment in the first degree when he knowingly and unlawfully restrains another person under the circumstances which expose that person to a risk of serious physical injury." KRS 509.020(1).

96.    Kentucky statutory law provides that "[a] person is guilty of unlawful imprisonment in the second degree when he knowingly and unlawfully restrains another person." KRS 509.030(1).

97.    Kentucky statutory law provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation. . . ." KRS 446.070.

98.    On or about December 10, 2021, Defendant, by and through its agents, representatives, employees, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, violated one or more Kentucky statutes.

99.    As a direct and proximate result of Defendant's statutory violations, Plaintiffs and the Plaintiff Class suffered physical, mental and/or emotional injuries, death and/or loss of consortium.

100.    If Defendant had not violated Kentucky statutes, Plaintiffs and Plaintiff Class would not have suffered any physical, mental and/or emotional injuries, death and/or loss of consortium because all of them would have had ample time to avoid the path of the tornado and seek and take safe shelter.

101.    As a result of Defendant's actions, Plaintiffs and Plaintiff Class have

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000024 of 000036

endured, presently endure or will continue to endure medical expenses, lost wages, physical pain, mental suffering, mental anguish, impairment of the power to labor and earn money, destruction of the power to labor and earn money, funeral expenses, loss of consortium, increased risk of future injury and increased insurance premiums.

102.    The actions, inactions, failures and omissions of Defendant as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs, the Plaintiff Class and others.

103.    This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

### COUNT IV – FALSE LIGHT (PLAINTIFFS ELIJAH JOHNSON, HALEY CONDER, AND McKAYLA EMERY)

104.    Under Kentucky law, "[t]he cause of action for false light is within the tort of invasion of privacy." *Palmer v. Alvarado*, 561 S.W.3d 367, 371 (Ky. App. 2018) (internal quotation marks omitted) (citation omitted). "False light requires that (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *Id.* at 371-372 (internal quotation marks omitted) (citation omitted).

105.    As detailed in paragraphs 9-70, Defendant, by and through its agents, representatives, employees, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, placed Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery in a false light.

106.    As a direct and proximate result of Defendant's actions, Plaintiffs Elijah

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000025 of 000036

Johnson, Haley Conder and McKayla Emery suffered reputational, physical, mental and/or emotional injuries.

107.    As a result of Defendant's actions, Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery have endured, presently endure or will continue to endure humiliation, mental suffering, mental anguish and impairment of the power to labor and earn money.

108.    The actions, inactions, failures and omissions of Defendant as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery and others.

109.    This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

### COUNT V – DEFAMATION OF CHARACTER (PLAINTIFFS ELIJAH JOHNSON, HALEY CONDER, AND McKAYLA EMERY)

110.    Under Kentucky law:

> The requisite elements for a defamation claim are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282-282 (Ky. 2014) (internal footnotes omitted).

111.    As detailed in paragraphs 9-70, Defendant, by and through its agents, representatives, employees, vendors, ostensible agents, operators, owners, members, managers, officers, shareholders and/or partners, defamed Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000026 of 000036

112.   As a direct and proximate result of Defendant's actions, Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery suffered reputational, physical, mental and/or emotional injuries.

113.   As a result of Defendant's actions, Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery have endured, presently endure or will continue to endure humiliation, mental suffering, mental anguish and impairment of the power to labor and earn money.

114.   The actions, inactions, failures and omissions of Defendant as described herein constitute intentional, reckless, malicious, wanton, grossly negligent, oppressive and/or fraudulent conduct and exhibited a reckless disregard for Plaintiffs Elijah Johnson, Haley Conder and McKayla Emery and others.

115.   This conduct rises to a level that warrants the imposition of punitive damages pursuant to KRS 411.184 and 411.186.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiffs, individually, and on behalf of those similarly situated, respectfully request and pray for the following relief:

1.   The Court certify the Plaintiffs' claims as a class action pursuant to the applicable Kentucky Rules of Civil Procedure, name Plaintiffs as the Lead Class Plaintiffs and appoint Plaintiffs' undersigned counsel as Class Counsel;

2.   Judgment against the Defendant in an amount that will fully, justly, fairly and reasonably compensate Plaintiffs and the Plaintiff Class for the harms suffered, losses incurred and damage caused by Defendant.

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000027 of 000036

Case 5:22-cv-00044-BJB-LLK   Document 1-1   Filed 03/25/22   Page 29 of 48 PageID #: 36

3.   For punitive or exemplary damages to punish the conduct of the

Defendant and to deter them and others from engaging in similar conduct;

4.   For a trial by jury;

5.   For pre-judgment and post-judgment interest from the date of the

damages incurred until paid;

6.   For costs herein expended;

7.   For the right to amend this  Complaint to add other claims and parties as

the proof allows; and

8.   For all other necessary and proper relief to which Plaintiffs and Plaintiff

Class may be entitled.

Respectfully submitted,

/s/ William D. Nefzger
William D. Nefzger
BAHE COOK CANTLEY & NEFZGER PLC
The BCCN Building
1041 Goss Avenue
Louisville, Kentucky 40217
will@bccnlaw.com
(502) 587-2002 – Telephone
(502) 587-2006 – Facsimile
*Co-Counsel for Plaintiffs and Putative Class*

/s/ William L. Davis
William L. Davis
108 Pasadena Drive, Suite 200
Lexington, Kentucky 40503
(859) 260-1997 (Office)
(859) 260-1310 (Fax)
wmldavis@hotmail.com
*Co-Counsel for Plaintiffs and
Putative Class*

Amos N. Jones
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
jones@amosjoneslawfirm.com
(202) 351-6187 – Telephone
*Co-Counsel for Plaintiffs and Putative Class*
*(pending* pro hac vice *admission)*

## VERIFICATION

I, Elijah Johnson, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

Elijah Johnson
Elijah Johnson

COMMONWEALTH OF KENTUCKY     )
                              ) SS
COUNTY OF Calloway           )

Subscribed and sworn to before me by Elijah Johnson, on this the 25th day of February 2022.

Notary Public

7/15/25
Commission Expires

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000029 of 000036

## **VERIFICATION**

I, Haley Conder, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified  Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_____
Haley Conder

COMMONWEALTH OF KENTUCKY      )
                            ) SS
COUNTY OF Calloway          )

Subscribed and sworn to before me by Haley Conder, on this the 23rd day of

February 2022.

_____
Notary Public

5/15/2025

Commission Expires

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000030 of 000036

## VERIFICATION

I, McKayla Emery, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified  Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_____
McKayla Emery

COMMONWEALTH OF KENTUCKY          )
                                                                   ) SS
COUNTY OF _Calloway_____          )

Subscribed and sworn to before me by McKayla Emery, on this the 15ᵗʰ day of February 2022.

_____
Notary Public

07/15/2025
Commission Expires

## VERIFICATION

I, Matthew Barber, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified  Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_Matthew Barber_
Matthew Barber

COMMONWEALTH OF KENTUCKY          )
                                  ) SS
COUNTY OF Calloway                )

Subscribed and sworn to before me by Matthew Barber, on this the 22 day of February 2022.

_Karen Elkins_
Notary Public

7/15/2025
Commission Expires

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000032 of 000036

## **VERIFICATION**

I, Matthew Rilee Valiant, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified  Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

Matthew Rilee Valiant

COMMONWEALTH OF KENTUCKY    )
                                                      ) SS
COUNTY OF Calloway                       )

Subscribed and sworn to before me by Matthew Rilee Valiant, on this the _11_

day of February 2022.

Notary Public

7/15/2025
Commission Expires

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000033 of 000036

## VERIFICATION

I, William Aliff, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified  Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_William Aliff_ (signature)

William Aliff

COMMONWEALTH OF KENTUCKY     )
                                                                     ) SS
COUNTY OF Calloway                             )

Subscribed and sworn to before me by William Aliff, on this the __11th__ day of February 2022.

_Karen N. Elkins_ (signature)

Notary Public

7/15/2025

Commission Expires

## VERIFICATION

I, Mary Smith, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

_____
Mary Smith

COMMONWEALTH OF KENTUCKY    )
                                               ) SS
COUNTY OF Calloway              )

Subscribed and sworn to before me by Mary Smith, on this the 22 day of February 2022.

_____
Notary Public

7/15/2025
Commission Expires

Presiding Judge: HON. KEVIN D. BISHOP (652418)

COM : 000035 of 000036

## VERIFICATION

I, John Lawson, Plaintiff in the above-referenced Action, verify that the facts alleged in the foregoing Verified  Class Action Civil Complaint are true and correct to the best of my information, knowledge and belief as of the date hereof.

John Lawson

COMMONWEALTH OF KENTUCKY      )

                              ) SS

COUNTY OF Calloway      )

Subscribed and sworn to before me by John Lawson, on this the  11  day of February 2022.

Karen N. Elkins

Notary Public

10/15/2025

Commission Expires

Presiding Judge: HON. KEVIN D. BISHOP (652418)



AOC-E-105    Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    *Courts.ky.gov*

CR 4.02; Cr Official Form 1

**NOT ORIGINAL DOCUMENT**
03/03/2022 09:30:42 AM
85305

Case #: **22-CI-00040**

Court: **CIRCUIT**

County: **GRAVES**

# CIVIL SUMMONS

*Plantiff,* **JOHNSON, ELIJAH ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC**, *Defendant*

TO:  **CHARLES S. FOSTER**
   **205 NORTH 6TH STREET**
   **MAYFIELD, KY 42066**

Memo: Related party is MAYFIELD CONSUMER PRODUCTS, LLC

The Commonwealth of Kentucky to Defendant:
**MAYFIELD CONSUMER PRODUCTS, LLC**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Emily Ward Buzan's*

Graves Circuit Clerk
Date: **3/3/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

   Date: _____, 20 _____        _____
                                                    Served By

                                            _____
                                                    Title

Summons ID: @00000094754
CIRCUIT: 22-CI-00040 Certified Mail
JOHNSON, ELIJAH ET AL VS. MAYFIELD CONSUMER PRODUCTS, LLC



Page 1 of 1

*Presiding Judge: HON. KEVIN D. BISHOP (652418)*

*CI : 000001 of 000001*

**eFiled**

**COMMONWEALTH OF KENTUCKY**
**52ND JUDICIAL CIRCUIT**
**GRAVES CIRCUIT COURT**
**CIVIL BRANCH**
**CIVIL ACTION NO. 22-CI-00040**
*ELECTRONICALLY FILED*

ELIJAH JOHNSON, ET AL,                                          PLAINTIFFS

VS.

MAYFIELD CONSUMER PRODUCTS, LLC,                               DEFENDANT

**WILLIAM L. DAVIS' ENTRY OF APPEARANCE AND NOTICE OF**
**ELECTION OF ELECTRONIC SERVICE**
• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Comes Attorney William L. Davis, KBA NO 17153, in person, and enter his appearance as Co-Counsel for Plaintiffs and Putative Class, in the case sub judice.

Further, Attorney William L. Davis, in accordance with CR 5.02(3) hereby notice that as Co-Counsel for the Plaintiffs and Putative Class in the case sub judice he elects to effectuate and receive service of correspondence, documents and pleadings via electronic means. The undersigned Co-Counsel for the Plaintiffs and Putative Class agrees to accept electronic service at the following address: wmldavis@hotmail.com. Pursuant to CR 5.02(2), all parties are required to promptly provide Attorney Amos Jones with an electronic address at which they may be served with correspondence, documents, and pleadings via electronic means.

Respectfully submitted,

/s/ *William L. Davis*
WILLIAM L. DAVIS
108 Pasadena Drive
Suite 200
Lexington, KY 40503
(859) 260-1997 (OFFICE)
(859) 260-1310 (FAX)

Page **1** of **2**

wmldavis@hotmail.com
*Co-Counsel for Plaintiffs and Putative Class*
**KBA NO.** 17153

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been served on March 15, 2022, by emailing to

a true and accurate pdf copy to Russell B. Morgan, rmorgan@bradley.com, Attorney for

Defendant.

/s/ *William L. Davis*
WILLIAM L. DAVIS
**KBA NO. 17153**

**COMMONWEALTH OF KENTUCKY**
**52ND JUDICIAL CIRCUIT**
**GRAVES CIRCUIT COURT**
**CIVIL BRANCH**
**CIVIL ACTION NO. 22-CI-00040**

ELIJAH JOHNSON, ET AL.                                      PLAINTIFFS

v.                              **NOTICE-MOTION-ORDER**

MAYFIELD CONSUMER
PRODUCTS, LLC                                              DEFENDANT

\* \* \* \* \* \* \* \* \*

**NOTICE**

Please take notice that the undersigned will, on Monday, March 28, 2022 at 8:30 a.m. CT in the courtroom of the above Court remotely via the Court's permanent Microsoft Teams link, make the following motion.

**MOTION TO APPOINT INTERIM CLASS COUNSEL**

Pursuant to CR 23.07(3), Plaintiffs request the Court appoint their co-counsel as Interim Class Counsel to act on behalf of the putative class outlined in Paragraphs 71-72 of the Verified Class Action Civil Complaint until such time as the Court resolves the issue of class certification. CR 23.07(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Id.* In support of the motion, Plaintiffs provide the following discussion and proposed order.

41F75011-BD74-4F34-8169-B2F8B26A61BBF : 000002 of 000008

<u>DISCUSSION</u>

## A.    Introduction

Plaintiffs bring this action against the Defendants for false imprisonment, intentional infliction of emotional distress and statutory violations after Defendant disallowed Plaintiffs from leaving its factory on December 10, 2021, resulting in serious injuries or death to multiple of its employees when a tornado struck the factory causing it to collapse. *See Verified Class Action Civil Complaint* ¶¶ 9-70.

## B.    Appointment of Interim Class Counsel is Warranted

### 1.    Courts Routinely Appoint Interim Class Counsel during the Pre-certification Period

Appointment of Interim Class Counsel during the pre-certification period is often necessary to protect the interests of the putative class. By way of example, prior to class certification, it is necessary for an attorney to take action to prepare for the certification. This typically involves discovery, as well as motion practice—whether advocating for or defending against dispositive motions. Ordinarily, such work is handled by the attorney who filed the action. In some cases, however, there may be competing cases or uncertainty that makes formal designation of interim counsel appropriate—thereby protecting the interests of the putative class pending certification. In that instance, both under Federal as well as Kentucky procedure, appointment of interim counsel is warranted.

### 2.    CR 23.07(3) Permits the Court to Appoint Interim Class Counsel

Kentucky's procedural rules provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a

41F75011-BD74-4F34-8169-B2FB26A61BBF : 000003 of 000008

class action." *Id.* Kentucky courts routinely "rely upon Federal case law when interpreting a Kentucky rule of procedure that is similar to its federal counterpart."[1]

### 3. Appointment of Interim Class Counsel is Warranted to Clarify Responsibilities and Protect the Interests of the Class

"[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."[2] This class action presents the appropriate situation as envisioned by the Rules for appointing Interim Class Counsel to pursue and to protect the interests of the putative class.

### C. The CR 23.07(3) Factors Necessary for Appointment of Interim Class Counsel are Clearly Satisfied

In appointing interim class counsel under CR 23.07(3), the Court should apply factors outlined in CR 23.07(1)(a) and (b). The inquiry is not detailed or lengthy. It is simply done to ensure the appointed class counsel are qualified and will fairly represent the interests of the putative class prior to certification.[3] With respect to their proposed interim class counsel, Plaintiffs respectfully submit the CR 27.07(3) factors are satisfied.

First, the initial factor involving the amount of work done to investigate the claims involving Defendants is readily satisfied—having vetted and investigated the claims in detail. The detailed and lengthy Verified Class Action Civil Complaint is the product of

---

[1] *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436 n. 4 (Ky. 2018) (quoting *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010); *see also* Kurt A. Philipps, Jr., 6 Ky. Prac. R. Civ. Proc. Ann. Rule 1, Comment 2 (Aug. 2017 update) ("The general pattern of the [Kentucky] Rules follows quite closely the mechanical and logical arrangement of the Federal Rules of Civil Procedure.").
[2] *In re: Am. Honda Motor Co.*, 2015 U.S. Dist. LEXIS 182559, at *6-7 (S.D. Ohio Dec. 18, 2015).
[3] *See e.g.*, *Carter v. Paschall Truck Lines, Inc.*, 2019 U.S. Dist. LEXIS 62586, at *13-14 (W.D. Ky. Apr. 10, 2019) (Sr. District Judge Russell) (appointing interim class counsel). [16]

41F75011-BD74-4F34-8169-B2FB26A61BBF : 000004 of 000008

that investigation. The proposed class counsel have spent significant time in researching and preparing this action based on a factual investigation and Kentucky statutes, regulations, and laws.

Second, the law firms have significant experience in both complex civil litigation as well as in class actions and mass torts. Counsel William D. Nefzger, with Bahe Cook Cantley & Nefzger PLC, has served as lead counsel in multiple state and federal mass torts and class action cases. William L. Davis was admitted to practice before the United States Supreme Court in 1981, served a lengthy and distinguished time as Assistant Deputy Attorney General in the Kentucky Attorney General's office, has been in private practice since 1987 and routinely handles complex civil litigation matters. Amos N. Jones of Amos Jones Law Firm founded his firm in 2010 where he practices in complex civil litigation areas, including constitutional law (particularly freedom of religion), discrimination and the Foreign Agents Registration Act of 1938. A noted appellate attorney, Mr. Jones has won key contracts disputes in employment litigation before the Kentucky Supreme Court and the U.S. Court of Appeals for the Third Circuit. Their collective experience will serve to advance the Plaintiffs' and the Class' interests and claims.

Finally, Plaintiffs' proposed interim class counsel have willingly committed the specific and significant resources necessary to preparing, pursuing, and presenting the Class' claims for resolution—whether at trial or by compromise.[4]

---

[4] *Carter*, 2019 U.S. Dist. LEXIS 62586 at *14 ("Rule 23(g)(4) simply requires that class counsel fairly adequate and adequately represent the interests of the class. Upon reviewing Plaintiffs' motion … the Court is satisfied that these firms satisfy the requirements.")

41F75011-BD74-4F34-8169-B2FB26A61BBF : 000005 of 000008

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court appoint

William D. Nefzger of Bahe Cook Cantley & Nefzger, PLC, William L. Davis and Amos

N. Jones of Amos Jones Law Firm as Interim Class Counsel for the putative class

identified in Paragraphs 70 and 71 of the Class Action Complaint.

Respectfully submitted,

/s/ William D. Nefzger
William D. Nefzger (KBA #88508)
BAHE COOK CANTLEY & NEFZGER PLC
The BCCN Building
1041 Goss Avenue
Louisville, Kentucky 40217
will@bccnlaw.com
(502) 587-2002 – Telephone
(502) 587-2006 – Facsimile
*Co-Counsel for Plaintiffs and Putative Class*

William L. Davis (KBA #17153)
108 Pasadena Drive, Suite 200
Lexington, Kentucky 40503
(859) 260-1997 (Office)
(859) 260-1310 (Fax)
wmldavis@hotmail.com
*Co-Counsel for Plaintiffs and
Putative Class*

Amos N. Jones (KBA# PH27624708)
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
jones@amosjoneslawfirm.com
(202) 351-6187 – Telephone
*Co-Counsel for Plaintiffs and Putative Class*
*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was sent via the
AOC's electronic filing system on this 21st day of March 2022 to the following:

Russell B. Morgan
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
rmorgan@bradley.com
(615) 252-2311 – Telephone
*Counsel for Defendant*

/s/ William D. Nefzger
Counsel for Plaintiff

41F75011-BD74-4F34-8169-B2FB26A61BBF : 000007 of 000008

**COMMONWEALTH OF KENTUCKY**
**52ND JUDICIAL CIRCUIT**
**GRAVES CIRCUIT COURT**
**CIVIL BRANCH**
**CIVIL ACTION NO. 22-CI-00040**

ELIJAH JOHNSON, ET AL.                                    PLAINTIFFS

v.                                    <u>**ORDER**</u>

MAYFIELD CONSUMER
PRODUCTS, LLC                                    DEFENDANT

\* \* \* \* \* \* \* \* \*

Motion having been made, the parties having been heard and the court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED** that the Plaintiffs' Motion to Appoint Interim Class Counsel is **GRANTED.** The Court finds Plaintiffs' co-counsel satisfy the requirements of CR 23.07 sufficiently to be designated as interim class counsel. Therefore, the Court designates William D. Nefzger of Bahe Cook Cantley & Nefzger PLC, William L. Davis and Amos N. Jones of Amos Jones Law Firm as Interim Class Counsel for the putative class identified in Paragraphs 71-72 of the Class Action Complaint.

Entered this _____ day of March 2022.

_____
JUDGE, GRAVES CIRCUIT COURT

Tendered By:

/s/ William D. Nefzger
William D. Nefzger (KBA #88508)
BAHE COOK CANTLEY & NEFZGER PLC
The BCCN Building
1041 Goss Avenue
Louisville, Kentucky 40217
will@bccnlaw.com
(502) 587-2002 – Telephone
(502) 587-2006 – Facsimile
*Co-Counsel for Plaintiffs and Putative Class*

William L. Davis (KBA #17153)
108 Pasadena Drive, Suite 200
Lexington, Kentucky 40503
(859) 260-1997 (Office)
(859) 260-1310 (Fax)
wmldavis@hotmail.com
*Co-Counsel for Plaintiffs and Putative Class*

Amos N. Jones (KBA# PH27624708)
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
jones@amosjoneslawfirm.com
(202) 351-6187 – Telephone
*Co-Counsel for Plaintiffs and Putative Class*
*Pro Hac Vice*

Distribution List:

_____ William D. Nefzger
_____ William L. Davis
_____ Amos N. Jones
_____ Russell B. Morgan

41F75011-BD74-4F34-8169-B2FB26A61BBF : 000008 of 000008